UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARKEITH BROWN,

    Petitioner,

v.                                                     Case No.:    2:16-cv-405-FtM-38MRM
                                                            Case No.:    2:14-cr-21-FtM-38MRM

UNITED STATES OF AMERICA,

    Respondent.
_____/

## OPINION AND ORDER[1]

Before the Court is Petitioner Markeith Brown's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. 1; Cr-Doc. 57)[2] and Memorandum of Law in Support (Doc. 2; Cr-Doc. 58). The Government opposes the motion (Doc. 9), to which Brown has filed a reply (Doc. 11). The Court held an evidentiary hearing on May 1, 2019, at which Brown was presented and represented by counsel. (Doc. 25). For the below reasons, the Court denies his motion.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink stops working or directs the user to some other site does not affect the opinion of the Court.

[2] The Court refers to filings in this civil action as "Doc." and to filings in the criminal docket, No. 2:14-cr-21-FtM-38MRM, as "Cr-Doc."

## BACKGROUND

On March 5, 2014, a federal grand jury indicted Brown for knowingly possessing with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1). (Cr-Doc. 1). This offense carried a penalty of five to forty years imprisonment. The Court appointed Russell Rosenthal, an Assistant Federal Defender ("Counsel"), to represent Brown. (Cr-Doc. 15).

On September 30, 2014, Brown pled guilty. Under the plea agreement, Brown

> expressly waive[d] the right to appeal [his] sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution[.]

(Cr-Doc. 22 at 14 (emphasis original)). In exchange, the Government agreed to recommend a three-level decrease for Brown's acceptance of responsibility, move for a downward departure because of his cooperation, and not to oppose a low-end guidelines sentence. (Cr-Doc. 22 at 3-5). The Court accepted Brown's plea and adjudicated him guilty.

On July 6, 2015, the Court sentenced Brown to 120 months' imprisonment, lower than the calculated guidelines range. (Cr-Doc. 47). The Presentence Investigation Report ("PSR") scored his base offense level at 26. (Cr-Doc. 39 at ¶ 26). Although no specific offense characteristic applied, the PSR found Brown a career offender under U.S.S.G. § 4B1.1 because of his prior drug convictions. (Cr-Doc. 39 at ¶ 32). The career offender status raised the offense level to 34. (Cr-Doc. 39 at ¶ 32). Then, with a three-

level decrease for accepting responsibility, Brown's total offense level was 31. (Cr-Doc. 39 at ¶¶ 34-36). Brown's criminal history points led to a Category IV designation. But, because of his career offender status, the category jumped to VI. (Cr-Doc. 39 at ¶¶ 48-50). An offense level of 31 and a criminal history category VI gave Brown a guidelines range of 188 to 235 months. (Cr-Doc. 39 at ¶ 89). Brown objected to neither the PSR's factual accuracy nor guidelines calculation. (Cr-Doc. 64 at 7).

Brown did, however, file a sentencing memorandum. (Cr-Doc. 45). He argued a criminal history category of VI overrepresented his past. The Court agreed and departed downward one category. Brown also moved for a variance under 18 U.S.C. § 3553(a) because of his family history, drug addiction, rehabilitative intent, and cooperation. The Court agreed and varied downward. Coupling these decreases with the Government's U.S.S.G. § 5K1.1 motion, the Court sentenced Brown to 120 months' imprisonment. This sentence was a 68-month reduction from the low-end of the guidelines range.

The Court entered Judgment on July 7, 2015. (Cr-Doc. 52; Cr-Doc. 53). Brown never appealed. He self-surrendered about two months later.

Brown now moves under 28 U.S.C. § 2255 for collateral relief. (Doc. 1; Doc. 2). He raises two grounds. In Ground One, Brown alleges Counsel rendered constitutionally ineffective assistance by not filing a notice of appeal after Brown told him to do so. His motion also identifies the grounds he wished to appeal. In Ground Two, Brown alleges Counsel failed to object to sentencing enhancements. He requests "remand of his entire involuntary plea, based on the Government's misconduct, and counsel's ineffectiveness and below the standard of representation." (Doc. 2 at 11). The Government opposes any relief.

## TIMELINESS

A habeas petition may not be filed more than one year from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Brown's judgment of conviction became final on July 21, 2015. He thus had until the year after to file a § 2255 motion, and he did so with nearly two months to spare. The Government concedes Brown's motion to be timely. (Doc. 9 at 3).

## EVIDENTIARY HEARING

A district court must hold an evidentiary hearing on a habeas petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). But "a district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous[.]" *Aaron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (citation omitted); *see also Gordan v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) ("An evidentiary hearing is not required whenever a petitioner asserts a claim of ineffective assistance under section 2255."). The Court found Ground One could not be answered on the record and granted an evidentiary hearing on that claim only. (Doc. 13).

## LEGAL STANDARD

A prisoner in federal custody may move for his sentence to be vacated, set aside, or corrected on four grounds: (1) the imposed sentence violates the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was over the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A § 2255 motion "may not be

a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (stating § 2255 relief is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice" (internal quotations omitted)). The petitioner bears the burden of proof on a § 2255 motion. *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015) (citation omitted).

Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). This procedural default rule "is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Id.* There is an exception: ineffective assistance of counsel claims. *Massaro*, 538 U.S. at 504 (holding the failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255).

Criminal defendants have a Sixth Amendment right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A defendant claiming ineffective assistance of counsel must show that (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice. *Id.* at 687; see *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (stating the *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal). Failing to show either *Strickland* prong is fatal. See *Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir. 2010) (stating "a court need not address both *Strickland* prongs if the petitioner fails to satisfy either of them").

"The reasonableness of a counsel's performance is an objective inquiry." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (footnote and citations omitted). "And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Id.* (footnote and citations omitted). Courts "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after . . . [an] adverse sentence[.]" *Strickland*, 466 U.S. at 689 (citation omitted). Also, "*Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy." *White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992).

For the prejudice prong, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Against this backdrop, the Court will address Brown's arguments.

## DISCUSSION

### A. Ground One

Brown argues that Counsel was ineffective for not filing a notice of appeal at his direction. The Court held an evidentiary hearing on this claim. Brown called himself to testify and introduced records from this proceeding and the underlying criminal case. (Pet. Ex. 1-15). The Government called Counsel and introduced a letter dated July 22,

2015, from Counsel to Brown. (Gov. Ex. 1). The testimony and evidence are summarized below:

Brown said that he called Counsel about a day after the sentencing hearing to express his uneasiness with his sentence—he thought he could have done better because of his help to the Government. According to Brown, Counsel said he received a good sentence. Brown testified their conversation ended with him directing Counsel to file an appeal. Brown admitted that he did not again talk to Counsel about an appeal and denied receiving Counsel's letter.

Counsel, a seventeen-year veteran federal public defender, took the stand next.[3] He testified that he spoke to Brown on July 7, 2015 about the sentence and an appeal. Counsel said that Brown was interested in disputing his sentence. He recalled telling Brown that an appeal would not benefit him because none of the grounds to appeal under the appellate waiver applied.[4] Counsel believed Brown understood his explanation and decided not to appeal. He also testified the appellate waiver was not new to Brown because Counsel explained it to him before he pled guilty. Counsel unequivocally denied Brown's claim that their conversation ended with Brown directing him to file a notice of appeal. Counsel stated the conversation ended with Brown understanding an appeal would not move his position forward. Counsel confirmed that he and Brown never discussed an appeal in their later communications.

---

[3] Before Counsel testified and after consulting with his attorney, Brown waived attorney-client privilege with Counsel.

[4] For instance, Brown's ten-year sentence was far below the calculated guidelines range and the statutory maximum penalty, and, for obvious reasons, was not a cruel and unusual punishment under the Eighth Amendment.

7

Counsel's testimony did not end there. He also explained that appellate waivers are standard clauses in plea agreements. It is his routine to be clear with defendants—including Brown—who plead guilty about the appellate waiver and its effects. Counsel also clarified that he would not have resisted filing a notice of appeal if Brown wanted to do so over his advice and appellate waiver.

On Counsel's letter to Brown dated July 22, 2015, the first paragraph reads: "Enclosed is a copy of the Judgment in your case that was filed on July 6, 2015. As discussed, you do *not* wish to appeal your sentence and I agree with your decision." (Gov. Ex. 1 (emphasis in original)). The letter was sent by regular mail to 13539 Gragston Circle, Tampa, Florida 33613, and Counsel said the letter was never returned as undeliverable. Counsel also testified that if Brown wanted to appeal then the letter would not have said otherwise.

After considering the evidence and observing the witnesses, the Court credits the testimony and letter of Counsel over Brown. Other than Brown's say so, he provided no evidence he told Counsel to file an appeal. And his actions after talking to Counsel confirm that he was no longer interested in appealing. For example, Brown admitted that he never again talked about an appeal with Counsel in their subsequent conversations. Nor did Brown ever follow up with Counsel about the status of an appeal.

Counsel's letter to Brown also corroborates his testimony. Counsel wrote the letter two weeks after talking with Brown. It memorializes Brown's ultimate decision not to appeal, explains the case ended, and says Counsel would no longer represent Brown. (Gov. Ex. 1). The letter put Brown on notice that Counsel would not file an appeal. And Brown did not tell Counsel that he disagreed with this course.

At the hearing, Brown argued that he did not receive the letter because the address listed included no apartment number. The Court is not persuaded. The letter's address is identical to the address in Brown's PSR—which he did not challenge. (Pet. Ex. 7 at 2). All the same, it is not material whether Brown received the letter. The letter is important because Counsel wrote it two weeks after talking to Brown and it memorializes Brown's decision not to appeal. If Brown told Counsel to file a notice of appeal, the letter would have been nonsensical.

The record shows that Brown had an interest in an appeal and asked Counsel about filing one. But the record also shows that Counsel consulted with Brown about the advantages and disadvantages of an appeal. And Brown understood the explanation and ultimately decided not to appeal. Brown has produced no persuasive evidence that Counsel instead ignored his wishes. *See Devine v. United States*, 520 F.3d 1286, 1289 (11th Cir. 2008) (finding the petitioner did not reasonably demonstrate to counsel that he was interested in appealing); *Bryson v. United States*, No. 6:15-cv-2046-ORL-31KRS, 2017 WL 3530366, at *3 (M.D. Fla. Aug. 16, 2017) (finding counsel was not constitutionally ineffective for failing to file an appeal when it was clear that counsel consulted with petitioner about an appeal). At bottom, Brown's last words to Counsel was not a directive to file a notice of appeal. Because Brown did not specifically request Counsel to file a notice of appeal, Counsel had no constitutional duty to do so. The Court thus denies Ground One.

**B. Ground Two**

Brown next claims Counsel was ineffective for not challenging his prior drug convictions as predicate offenses for the career offender status, and not requesting a two-level reduction under 18 U.S.C. § 3582(c)(2). The record refutes both arguments.

*1. Career offender status*

Brown asserts that his prior Florida drug convictions cannot serve as predicate offenses for career offender status under U.S.S.G. § 4B1.1. That guideline says,

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is . . . a controlled substance offense; and (3) the defendant has at least two prior felony convictions of . . . a controlled substance offense.

U.S.S.G. § 4B1.1(a). The Guidelines define "controlled substance offense" to mean

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

Brown was found to be a career offender because of three felony convictions for delivery of cocaine and possessing cocaine with intent to deliver within 1,000 feet of a school in violation of Florida Statute § 893.13(1).[5] (Cr-Doc. 39 at ¶¶ 32, 42-43, 46). He

---

[5] Florida Statute § 893.13(1)(a) says "a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance." Subsection (c)—which relates to schools—provides "a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance in, on, or within 1,000 feet of the real property comprising . . . a public or private elementary, middle, or secondary school." Fla. Stat. § 893.13(1)(c).

10

argues these convictions are not controlled substance offenses under binding precedent. (Doc. 2 at 6; Doc. 11 at 1-2). He also asserts his convictions "violated his Fourteenth Amendment right to due process and equal protection of the law, his Sixth Amendment rights to the indivisible element clause and divisible element clause, for which the State of Florida has no 'mens rea' to illicit nature of the substance." (Doc. 2 at 2). From there, he "requests remand of his unconstitutional sentence." (Doc. 2 at 2).

The Government responds that Brown's challenge is procedurally defaulted and non-cognizable. For the merits, it argues Brown confuses principles associated with the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), with the career offender guideline. (Doc. 9 at 6-7). The Court agrees with the Government.

Brown's challenge to his Guidelines calculation is not cognizable on collateral review. "Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc). An "error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quotation marks omitted). "An alleged misapplication of the advisory Sentencing Guidelines—such as an erroneous designation of a defendant as a career offender—is not a fundamental defect that inherently results in a complete miscarriage of justice." *Ford v. United States*, No. 2018 WL 7018045, at *1 (11th Cir. Feb. 21, 2018) (citation omitted); *Spencer*, 773 F.3d at 1138-40 ("A misapplication of advisory sentencing guidelines . . . does not violate an 'ancient' right, nor does it raise constitutional concerns."). A petitioner shows a fundamental defect with proof "that he is either actually innocent of his crime or that a prior conviction used

11

to enhance his sentence has been vacated[.]" *Spencer*, 773 F.3d at 1139. Neither exception applies here. *See Ford*, 2018 WL 7018045, at *1; *Grice v. United States*, No. 3:15-CR-33-J-32JBT, 2019 WL 3944322, at *3-4 (M.D. Fla. Aug. 21, 2019). Brown does not claim to be innocent of the crime he pleaded guilty to. Nor have the prior convictions that led to his career-offender designation been vacated. And Brown's ten-year sentence did not exceed the forty-year statutory maximum.

To the extent that Brown argues Counsel was ineffective for not challenging his prior convictions as predicate offenses, the argument fails the *Strickland* test. The Eleventh Circuit has held that convictions under Florida Statute § 893.13 are controlled substance offenses for career offender status. *See United States v. Jimerson*, 749 F. App'x 950, 951 (11th Cir. 2019); *United States v. Pridegon*, 853 F.3d 1192, 1198 (11th Cir. 2017); *United States v. Smith*, 775 F.3d 1262 (11th Cir. 2014). Counsel thus did not perform deficiently in failing to raise a meritless argument.

Brown also relies on cases about the ACCA and an unrelated Florida law. For example, Brown cites *United States v. Shannon*, 631 F.3d 1187 (11th Cir. 2011) to argue the record does not establish that he committed the prior drug convictions. But *Shannon* differs. There, the Eleventh Circuit held a conviction for buying drugs under a different Florida law did not qualify as a controlled substance offense. 631 F.3d at 1189-90. The purchase of cocaine is not at issue here—delivery of cocaine is. (Cr-Doc. 39 at ¶ 46).

What Brown misses is that Counsel took another strategy to advocate for him. He moved for a horizontal departure based on his criminal history being overrepresented and a variance under 21 U.S.C. § 3553(a). This strategy worked because the Court granted both the departure and variance. Brown received years off his sentence because of

Counsel's argument. The Court thus denies Brown's argument that counsel should have argued against his designation as a career offender.[6]

   2. *Two-point reduction under 18 U.S.C. § 3582(c)(2)*

As best the Court can tell, Brown also argues that Counsel was ineffective for not seeking a reduction under 18 U.S.C. § 3582(c)(2). Under that law, a court may modify a defendant's term of imprisonment if the defendant was sentenced based on a sentencing range the Sentencing Commission lowered. *Id.*

About eight months before Brown's sentencing, the Sentencing Commission passed Amendment 782 that retroactively reduced the offense levels in U.S.S.G. § 2D1.1's drug quantity table. Because the Court sentenced Brown under the Guidelines that incorporated Amendment 782's changes, he cannot argue Counsel was deficient for not seeking a reduction on that basis. The Court also calculated his guidelines range based on Brown's career offender status—not the drug quantity table. This distinction matters because Amendment 782 only reduced offense levels for drug sentences calculated under the drug quantity table. It did not affect the career offender provisions. Counsel thus had no basis to raise the objections Brown now argues. And relatedly, even

---

[6] Brown makes a passing reference that he was unconstitutionally sentenced for three kilograms of cocaine when he only admitted to 1.5 kilograms. (Doc. 2 at 10-11). This argument is procedurally defaulted and misguided. In the plea agreement, Brown admitted to having over 500 grams or more of cocaine. (Cr-Doc. 39 at ¶ 23). And at his change of plea hearing, Brown again admitted to possessing the cocaine: "Cocaine was in the car. I knew it was there. It was 500 grams or more, and it was intended for distribution." (Cr-Doc. at 81 17:18-22). And the PSR—which Brown did not object to— attributed about 2,988 grams of cocaine to him. (Cr-Doc. 39 at ¶¶ 19, 26). This argument does not warrant relief.

if Counsel should have done so, Brown suffered no prejudice.[7]  The Court, therefore, denies Brown's motion on Ground Two.

Accordingly, it is now

**ORDERED:**

(1) Petitioner Markeith Brown's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. 1; Cr-Doc. 57) is **DENIED**.

(2) The Clerk is **DIRECTED** to enter judgment, terminate any pending motions, and close the file.

(3) The Clerk is **DIRECTED** to file a copy of this Opinion and Order in the related criminal case.

**DENIAL OF BOTH CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Brown is not entitled to a certificate of appealability ("COA").  A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate.  28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 184 (2009).  Rather, the court must first issue a COA.  Section 2253(c)(2) permits a court to issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To merit a COA, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement

---

[7] Brown cannot be surprised by this outcome because the Court denied his motion to reduce his sentencing under Amendment 782 in the criminal case.  (Cr-Doc. 73).

14

to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citations omitted). Upon review of the record, the Court finds that Brown has not made the requisite showing in these circumstances. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). And because he may not have a COA, he may not appeal *in forma pauperis*.

**DONE** and **ORDERED** in Fort Myers, Florida on this 9th day of September 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record